UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAMERON N. VERDI,

        Plaintiff,

        v.

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
SIGNATURE BANK, et al.,

        Defendants.

Case No.: 24-cv-00791-DEH-RFT

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SIGNATURE BANK'S MOTION TO DISMISS**

Ryan A. Kane
Adam M. Bialek
Maxwell G. Dillan
Nicole C. Rende
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
rkane@wmd-law.com
abialek@wmd-law.com
mdillan@wmd-law.com
nrende@wmd-law.com

*Attorneys for Federal Deposit Insurance Corporation as Receiver for Signature Bank*

February 16, 2024

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY................................................................. 2

    A.    The FDIC Is Appointed as Receiver for Signature After It fails. ........................... 2

    B.    Plaintiff's Prior Complaint Was Dismissed For Failure to Exhaust the FDIC-R's Administrative Claims Process and His Administrative Claim Was Subsequently Denied by the FDIC-R. ............................................................ 2

    C.    The United States District Court for the Central District of California Held It Lacked Subject Matter Jurisdiction over Plaintiff's Claims, and Transferred the Case to the Southern District of New York.................................. 3

    D.    Plaintiff's Claims Depend on His Status as Stockholder of the Bank and Proof That the Alleged Misconduct of Defendants Depressed the Value of the Bank's Stock. .................................................................................................... 4

ARGUMENT.................................................................................................................................. 5

I.    PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS. ........................ 5

    A.    Prudential Standing. ................................................................................................ 5

    B.    Third Party Standing. .............................................................................................. 5

    C.    Plaintiff's Claims Belong to the FDIC-R Under FIRREA's Succession Clause Because the FDIC-R Succeeded to All Claims at Issue.............................. 6

CONCLUSION............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Abrams v. Donati*,
   66 N.Y.2d 951 (1985) .................................................................................................11

*AHW Inv. P'ship v. Citigroup, Inc.*,
   806 F.3d 695 (2d Cir. 2015) ........................................................................................11

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016) .................................................................................. *passim*

*Am. W. Bank Members v. Utah*,
   Case No. 16-cv-326, 2023 WL 4108352 (D. Utah June 21, 2023) ...................... 6, 7, 8

*Barnes v. Harris*,
   783 F.3d 1185 (10th Cir. 2015) ...................................................................................12

*Bennett v. Spear*,
   520 U.S. 154 (1997) ......................................................................................................5

*Collins v. Mnuchin*,
   938 F.3d 553 (5th Cir. 2019) .........................................................................................9

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) ..................................................................................................9

*Culbertson v. Berryhill*,
   139 S. Ct. 517 (2019) ..................................................................................................10

*Dist. 65, UAW v. Harper & Row, Publishers, Inc.*,
   576 F. Supp. 1468, 1483 (S.D.N.Y. 1983) ...................................................................8

*Esther Sadowsky Testamentary Tr. v. Syron*,
   Case No. 08-cv-5221, 2009 WL 10697000 (S.D.N.Y. Jan. 28, 2009) .........................7

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S.Ct. 2356 (2019) ...................................................................................................9

*In re Beach*,
   702 F.3d 772 (4th Cir. 2012) .......................................................................................12

*Knowles v. U.S. Coast Guard*,
   924 F. Supp. 593 (S.D.N.Y. 1996) ...............................................................................5

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ......................................................................................................6

*Khan v. United States*,
   548 F.3d 549 (7th Cir. 2008) .........................................................................................7

*Lamar, Archer & Cofrin, LLP v. Appling*,
    138 S. Ct. 1752 (2018) ............................................................................................................. 7

*Lamont v. Woods*,
    948 F.2d 825 (2d Cir. 1991) ..................................................................................................... 5

*Levin v. Miller*,
    763 F.3d 667 (7th Cir. 2014) ........................................................................................ 11, 12, 13

*Lubin v. Skow*,
    382 F. App'x 866 (11th Cir. 2010) .......................................................................................... 12

*Maracich v. Spears*,
    570 U.S. 48 (2013) .................................................................................................................. 10

*McCarty v. The Bank of New York Mellon*,
    669 F. App'x 6 (2d Cir. 2016) ................................................................................................... 5

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) ........................................................................................... 2, 7, 10

*Rajamin v. Deutsche Bank Nat. Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014) ........................................................................................................ 5

*Serino v. Lipper,*
    123 A.D.3d 34 (1st Dep't 2012) ............................................................................................. 11

*United States v. Suarez*,
    791 F.3d 363 (2d Cir. 2015) ...................................................................................................... 6

*United States v. Transocean Deepwater Drilling, Inc.*,
    767 F.3d 485 (5th Cir. 2014) .................................................................................................. 10

*Verdi v. Fed. Deposit Ins. Corp.*,
    Case No. 23-cv-01206, 2023 WL 6388225 (C.D. Cal. Sept. 28, 2023) .................................... 2

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................................................................................. 5

*Whelan v. Abell*,
    953 F.2d 663 (D.C. Cir. 1992) .................................................................................................. 6

*Yudell v. Gilbert*,
    99 A.D.3d 108, 108 (1st Dep't 2012) ..................................................................................... 12

*Zucker v. Rodriguez*,
    919 F.3d 649 (1st Cir. 2019) ............................................................................................ passim

**Statues**

12 U.S.C. § 1821 ............................................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. *passim*

Fed. R. Civ. P. 17 ........................................................................................................................... 6

The Federal Deposit Insurance Corporation ("FDIC") as the Receiver for Signature Bank ("FDIC-R") submits this Memorandum of Law in support of its Motion to Dismiss the Complaint (ECF No. 1) (the "Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule" or "Rules"), and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified as amended in the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d), on the grounds that Plaintiff Cameron N. Verdi ("Plaintiff") lacks prudential standing because Plaintiff does not own the claims he seeks to assert in this case and, therefore, he fails to plead claims on which any relief can be granted under Rule 12(b)(6).[1]

## PRELIMINARY STATEMENT

In March 2023, Signature Bank ("Signature" or "Bank") was closed, and the FDIC was appointed as Receiver for the Bank. When the FDIC was appointed as Receiver for the Bank, it succeeded by operation of law to "all rights, titles, powers, and privileges" of the Bank and any Bank stockholder with respect to the Bank and the assets of the Bank. 12 U.S.C. § 1821(d)(2)(A)(i) (the "Succession Clause"). Plaintiff's claims depend entirely on his status as a Bank stockholder, and, as demonstrated below, they concern the Bank and the Bank's assets. The claims therefore belong to the FDIC-R, not Plaintiff, under the Succession Clause. As a result, Plaintiff lacks prudential standing because he asserts claims that he does not own. Accordingly, Plaintiff's claims are not ones upon which relief can be granted and they should be dismissed under Rule 12(b)(6).

---

[1] On February 15, 2024, the FDIC-R was advised that a settlement in principle had been reached between Plaintiff and the Individual Defendants. Nevertheless, the claims against the FDIC-R should be dismissed for lack of prudential standing for the reasons set forth herein.

## BACKGROUND AND PROCEDURAL HISTORY

**A.     The FDIC Is Appointed as Receiver for Signature After It fails.**

On March 12, 2023, the New York State Department of Financial Services closed Signature and appointed the FDIC as Receiver for Signature. *See* Complaint ¶ 1 n.1. Upon its appointment, the FDIC-R succeeded by operation of law to all rights, titles, powers, and privileges of not only the Bank, but also any Bank stockholder with respect to the Bank and the assets of the Bank, including any claims of such stockholders. 12 U.S.C. § 1821(d)(2)(A)(i); *see also Zucker v. Rodriguez*, 919 F.3d 649, 657 (1st Cir. 2019) (FDIC as receiver succeeded to claims that "assert 'right[s] . . . of [a] stockholder . . . of [the Bank] . . . with respect to the [Bank] and the assets of the [Bank]'" "'by operation of law' under §1821(d)(2)(A)." (alterations in original)); *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998) ("Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming.").

**B.     Plaintiff's Prior Complaint Was Dismissed For Failure to Exhaust the FDIC-R's Administrative Claims Process and His Administrative Claim Was Subsequently Denied by the FDIC-R.**

On April 15, 2023, Plaintiff submitted an administrative claim with the FDIC-R. *Verdi v. FDIC*, Case No. 23-cv-01206, 2023 WL 6388225, at *1 (C.D. Cal. Sept. 28, 2023). On April 17, 2023, Plaintiff filed his prior complaint against Signature, Joseph DePaolo, Stephen Wyremski, Eric Howell, and Does 1-10 in California Superior Court. *Id*. On April 21, 2023, Plaintiff filed an amended complaint. *Id*. The amended complaint alleged causes of action including fraudulent concealment, constructive fraud, and aiding and abetting breach of fiduciary duty against all Defendants and conspiracy to defraud, breach of fiduciary duty, and breach of duty of loyalty against DePaolo, Wyremski, Howell, and Does 1-10. *Id*. On July 5, 2023, the FDIC-R filed a

Notice of Substitution in California Superior Court for Defendant Signature as the real party in interest. *Id*. at *2. On July 6, 2023, following the FDIC-R's substitution, the FDIC-R removed the California Superior Court action to federal court. *Id*. On September 28, 2023, the court dismissed Plaintiff's action for lack of subject matter jurisdiction because he failed to exhaust the administrative claims process. *Id*. at *1. On October 10, 2023, the FDIC-R denied Plaintiff's administrative claim.

    **C.**    **The United States District Court for the Central District of California Held It Lacked Subject Matter Jurisdiction over Plaintiff's Claims, and Transferred the Case to the Southern District of New York.**

On November 14, 2023, Plaintiff commenced this action and filed the Complaint, which is virtually identical to his prior amended complaint, in the District Court for the Central District of California. *See* ECF No. 1-1 at IX(a) (identifying this action as identical to Case No. 23-cv-01206). Plaintiff refiled his action in the Central District of California even though the FDIC-R's previous motion to dismiss explained that only this Court and the District Court for the District of Columbia could have jurisdiction to hear any disallowed claims. *See* Mem. of P. & A. in Supp. of Mot. to Dismiss at 11-12, *Verdi v. FDIC*, Case No. 23-cv-01206 (C.D. Cal. Aug. 2, 2023), ECF No. 17-1.

On December 15, 2023, the FDIC-R moved to dismiss the Complaint for lack of subject matter jurisdiction and for lack of prudential standing. ECF No. 11. On January 26, 2024, Judge James V. Selna held that the court lacked subject matter jurisdiction, but he transferred the case to the Southern District of New York instead of dismissing it. ECF No. 21 at 9. Judge Selna declined to decide whether Plaintiff lacked prudential standing because the court lacked subject matter jurisdiction. *Id.* at 8 (stating that "[b]ecause this Court does not have subject matter jurisdiction, it does not reach the parties' other arguments").

### D. Plaintiff's Claims Depend on His Status as Stockholder of the Bank and Proof That the Alleged Misconduct of Defendants Depressed the Value of the Bank's Stock.

Here, Plaintiff's Complaint asserts claims against all Defendants as a stockholder of Signature. He alleges that he bought shares of the Bank on March 1, 2022 and on March 10, 2023 following certain public statements from the Defendants (which he bought on margin with funds borrowed from TD Ameritrade). Complaint ¶¶ 25, 35-37. The Complaint asserts causes of action for fraudulent concealment, constructive fraud, conspiracy to defraud, and aiding and abetting breach of fiduciary duty as to all Defendants (First, Second, Third, and Sixth Causes of Action), and breach of fiduciary duty and breach of duty of loyalty as to the Individual Defendants (Fourth and Fifth Causes of Action). *Id*. ¶¶ 141-201.

Plaintiff's claims against the Individual Defendants complain of alleged misconduct and mismanagement at Signature. According to Plaintiff, the Individual Defendants failed to provide accurate and complete information relating to Signature's business, operations, and prospects, the lack of proper internal risk controls at Signature, and their own mismanagement of Signature. *E.g.*, *id*. ¶¶ 28-34, 40, 57-59, 75-103. Plaintiff alleges that the Individual Defendants failed to disclose concerns relating to Signature's stability based on "risks inherited by the instability of the cryptocurrency market, rising interest rates, amount of bond holdings, and amount of uninsured deposits" at the Bank. *Id*. ¶ 78. He alleges that the Individual Defendants' "failure of adequate asset liability management, their failure to disclose their ineptness management of risk, while simultaneously selling [Signature] stock from their personal holdings, fueled their need to artificially inflate the public's, including Plaintiff's, view of the welfare of the Company." *Id*. ¶ 102.

Plaintiff's claimed damages against Defendants rely on an alleged reduction in the value of Signature's assets and stock value. He asserts that the Defendants' conduct "essentially render[ed] [Signature] stock illiquid and valueless" (*id*. ¶ 46), which, in turn, caused him significant losses due to a "precipitous decline in the market value of [Signature's] common shares." *Id*. ¶ 140.

## ARGUMENT

**I.  PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS.**

   **A.  Prudential Standing.**

Prudential standing concerns "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citation omitted); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). "Even if a plaintiff satisfies the constitutional requirements of standing, a court may nevertheless deny standing for prudential reasons." *Knowles v. U.S. Coast Guard*, 924 F. Supp. 593, 599 (S.D.N.Y. 1996) (citations and internal quotations omitted); *see also Lamont v. Woods*, 948 F.2d 825, 829 (2d Cir. 1991) ("If [] constitutional minima are satisfied, a court may nevertheless deny standing for prudential reasons."). Prudential standing presents a threshold question of justiciability—*i.e.*, is the plaintiff "entitled to have the court decide the merits of the dispute[?]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also McCarty v. The Bank of New York Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016) ("'The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues,' and it implicates both constitutional and prudential limits on the court's jurisdiction.").

   **B.  Third Party Standing.**

One of the self-imposed limits on exercising federal jurisdiction is that a party may not rest its claims on the rights of third parties where it cannot assert a valid right to relief of its own.

5

*Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014); *see also Am. Psychiatric Ass'n*, 821 F.3d at 358. In other words, "a plaintiff may ordinarily assert only his own legal rights, not those of third parties." *Am. Psychiatric Ass'n*, 821 F.3d at 358. "Unlike constitutional standing, which focuses on whether a litigant sustained a cognizable injury-in-fact, 'the prudential standing rule . . . bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (citations omitted). A plaintiff may bring forth a claim based on the legal rights of a third party only when it satisfies the limited exception by showing that (1) the plaintiff has a "close" relationship with the third party and (2) the third party is hindered from protecting his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (citations omitted); *see also Am. Psychiatric Ass'n*, 821 F.3d at 358. As demonstrated below, Plaintiff fails to satisfy the third party standing exception, and Plaintiff lacks prudential standing.[2]

### C. Plaintiff's Claims Belong to the FDIC-R Under FIRREA's Succession Clause Because the FDIC-R Succeeded to All Claims at Issue.

Third party standing is squarely at issue where, as here, Plaintiff improperly tries to assert the rights of the FDIC-R. As a result, the Court should dismiss this action for lack of prudential standing under Rule 12(b)(6) because Plaintiff's claims belong to the FDIC-R. Plaintiff is not the real party in interest and cannot state a claim upon which relief can be granted.

---

[2] "Rule 17(a)(1) . . . essentially codifies" the portion of the prudential standing doctrine that "encompasses . . . the general prohibition on a litigant's raising another person's legal rights." *Am. W. Bank Members v. Utah,* Case No. 16-cv-326, 2023 WL 4108352, at *4 n.3 (D. Utah June 21, 2023) (citation and internal quotation marks omitted). Rule 17(a)(1) states that every action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion . . . because the plaintiff is not the person who should be bringing the suit," and thus, "the plaintiff has 'fail[ed] to state a claim upon which relief can be granted.'" *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) (alterations in original).

Congress directed, as part of FIRREA's statutory scheme, that the FDIC as receiver succeeds not only to the assets of a failed institution (here, Signature) but also to "all rights" of the institution's stockholders (here, Plaintiff) with respect to the institution and its assets:

> The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to—
>
> (i) *all rights, titles, powers, and privileges* of the insured depository institution, and *of any stockholder*, member, accountholder, depositor, officer, or director of such institution *with respect to the institution and the assets of the institution*; . . . .

12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added).

Under the Succession Clause, the FDIC-R owns all the claims that Plaintiff has attempted to assert because they relate to Signature and the assets of Signature. This result follows from a plain reading of section 1821(d)(2)(A)(i)'s phrase "with respect to" the bank, which broadly includes any rights of a stockholder "pertaining to," "concerning," or "relating to" a failed bank[3] and its assets, regardless of whether those rights are "derivative" or "direct." *Zucker*, 919 F.3d at 656-57 (quoting *Khan v. United States*, 548 F.3d 549, 556 (7th Cir. 2008) and *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)); *see also Pareto*, 139 F.3d at 700 ("Congress has transferred everything it could to the FDIC . . . ."); *Esther Sadowsky Testamentary Tr. v. Syron*, Case No. 08-cv-5221, 2009 WL 10697000, at *2-3 (S.D.N.Y. Jan. 28, 2009) (same).

The FDIC-R owns claims, like Plaintiff's claims here, that "depend[] entirely on the [claimant's] position as a Bank stockholder," "seek[] to recover for lost interest in the Bank," and "necessarily require the [claimant] to prove that, but-for the malfeasance of [management], the assets of the Bank would have been much greater, and that increase in Bank assets would have

---

[3] The phrase—"with respect to" the bank—plainly encompasses Plaintiff's claims against the Individual Defendants because (1) Congress expressly provided limited jurisdiction over "any claim relating to any act or omission of an institution for which the FDIC has been appointed receiver" *see* 1821(d)(13)(D)(ii) and (2) the actions and statements of the Individual Defendants constitute actions and statements of the Bank. *See* n.4, *infra*.

7

inured to the benefit of the [claimant] as the Bank's parent stockholder." *Zucker*, 919 F.3d at 656; *see also Am. W. Bank Members*, 2023 WL 4108352, at *5-8 (following *Zucker*).

In *Zucker*, the First Circuit held that similar claims of the holding company's bankruptcy trustee were owned by the FDIC as receiver because, like Plaintiff's claims here, the claims in *Zucker* depend on "proving that malfeasance by its directors depressed the Bank's assets," which "means that the claims relate to or concern the assets of the Bank." 919 F.3d at 656. This case is virtually indistinguishable from *Zucker*. Plaintiff claims to be a Signature stockholder, and any right he has to bring legal claims relating to Signature and its assets is a "right[] . . . of [a] stockholder" of the Bank. *Id*. (alterations in original) (citing 12 U.S.C. § 1821(d)(2)(A)(i)). As in *Zucker*, Plaintiff's claims against Defendants ultimately seek recovery for the diminution in value of his stockholder interest in the Bank. *See* Complaint ¶ 140. Plaintiff's alleged damages boil down to his stockholder interest in the Bank being rendered "valueless" given the Bank's failure. *Id*. ¶ 46. To demonstrate damages, Plaintiff would have to show that but-for the alleged malfeasance, "the assets of the Bank would have been much greater, and that increase in Bank assets would have inured to the benefit of" Plaintiff as Signature's stockholder. *Zucker*, 919 F.3d at 656. Accordingly, like in *Zucker*, Plaintiff's claims ultimately concern acts that allegedly depressed the value of Signature's assets and left Signature's stock valueless, and, therefore, the claims relate to the Bank and the Bank's assets. *Id*.[4] Under the plain meaning of section 1821(d)(2)(A)(i), Plaintiff's claims therefore belong to the FDIC-R.

If Plaintiff asserts that the FDIC-R succeeds only to "derivative" and not "direct"

---

[4] Additionally, as stated *supra*, the actions and statements of the Individual Defendants constitute actions and statements of the Bank. *See, e.g.*, *Dist. 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F. Supp. 1468, 1483 (S.D.N.Y. 1983) ("A corporation is liable for the acts of its officers and directors committed in furtherance of the business of the corporation and in the scope of their employment.").

8

stockholder claims, that argument is wrong and ignores the text, structure, history, and purpose of FIRREA. "The most basic problem for [this] interpretation is that the direct-derivative distinction appears nowhere in the language of § 1821(d)(2)(A)." *Id.* at 657. The First Circuit's refusal to read a direct versus derivative distinction into the Succession Clause is consistent with the Supreme Court's analysis of the similar succession clause in the Housing and Economic Recovery Act ("HERA") without adopting a distinction between direct and derivative claims even though the court below did so. *Compare Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021) (not reading a direct versus derivative distinction into the HERA succession clause), *with Collins v. Mnuchin*, 938 F.3d 553, 573 (5th Cir. 2019) (reading a direct versus derivative distinction into the HERA succession clause). Moreover, pre-failure, derivative claims are rights of the bank and direct claims are rights of stockholders, but once a bank fails, the statute confers on the FDIC-R "all rights" of *both* "the [failed bank]" *and* "any stockholder" of the bank "with respect to the [bank] and the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i). Both derivative and direct claims belong to the FDIC-R if they are "with respect to the [bank] and the assets of the [bank]." And whether that is so depends on the claims' relation to the bank and its assets—considered in light of FIRREA's purposes to have the FDIC maximize recovery for, and distribute assets to, all bank stakeholders according to a priority scheme prescribed by Congress—not the claims' categorization as "direct" or "derivative" under state law. "In the end, there is *no ambiguity* in Congress's choice not to limit the claims to which the FDIC succeeds to derivative claims." *Zucker*, 919 F.3d at 658 (emphasis added). Because the examination of the statutory language of the Succession Clause yields a clear answer that it is not limited to derivative claims, the analysis should begin and stop with the statute. *Food Mktg. Inst. v. Argus Leader Media*, 139 S.Ct. 2356, 2364 (2019).

9

Moreover, as *Zucker* recognizes, section 1821(d)(2)(A)(i)'s reservation of claims with respect to the Bank and its assets for the receivership is central to a comprehensive statutory scheme for responding to bank crises. *See* 919 F.3d at 654-55, 658; *see also Culbertson v. Berryhill*, 139 S. Ct. 517, 522 (2019) (examining "the structure of the statute and its other provisions" together with its plain language (quoting *Maracich v. Spears*, 570 U.S. 48, 60 (2013))); *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 496 (5th Cir. 2014) (considering "the full text of the statute, rather than one isolated clause, along with the statute's structure"). FIRREA's statutory scheme "helps assure the expeditious and orderly protection of all who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto*, 139 F.3d at 700. Under section 1821(d)(11)(A), for example, "amounts realized from the liquidation or other resolution of any insured depository institution by any receiver" are distributed (after paying administrative expenses) first to pay the institution's deposit liabilities, then to pay "general or senior" liabilities, then to pay "any obligation subordinated to depositors or general creditors," and last to pay "any obligation to shareholders . . . including any depository institution holding company." 12 U.S.C. § 1821(d)(11)(A).

It would defeat Congress' scheme of expeditious and orderly protection of all stakeholders to force the FDIC to spend receivership resources to compete against other stakeholders for limited bank-related assets. In this way, the Succession Clause, section 1821(d)(2)(A)(i), and FIRREA's priority scheme, section 1821(d)(11)(A), work together and should be read together. Under section 1821(d)(2)(A)(i), Congress transferred to the FDIC as receiver all claims of stockholders, members, accountholders, depositors, officers, and directors of a failed bank with respect to the bank and the assets of the bank. Congress then mandated through section 1821(d)(11)(A)'s priority

10

scheme that claims of stockholders are paid last. If permitted to proceed, Plaintiff's lawsuit, like the lawsuit in *Zucker*, "would allow former [stockholders] to turn this priority scheme on its head" by letting a stockholder be paid ahead of other claimants. 919 F.3d at 658; *see also Levin v. Miller*, 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, J., concurring) ("[A]llowing [the holding company] any prospect of recovery ahead of or on par with the FDIC turns the equities upside down."). *Zucker* thus recognizes that the Succession Clause should not be read, in the context of pre-receivership claims competing for limited Bank assets, to defeat the priority scheme or otherwise undermine Congress' determination to place these competing claims in the hands of a single agency—namely, the FDIC-R. *See* 919 F.3d at 658. Consistent with the scheme, the claims asserted here belong to FDIC-R under section 1821(d)(2)(A)(i). Moreover, there is no close relationship between the Plaintiff shareholder and the FDIC-R, nor any hinderance that prevents the FDIC-R from protecting Plaintiff's interest. Consequently, Plaintiff's Complaint states no claim upon which the Court can grant relief.

Even if the Court were to decide not to follow the *Zucker* court's statutory interpretation of the Succession Clause, the outcome would be the same under a direct/derivative analysis because Plaintiff's claims are clearly derivative claims under applicable New York law. *See AHW Inv. P'ship v. Citigroup, Inc.*, 806 F.3d 695, 699 (2d Cir. 2015) ("Under New York law, we look to the law of the state of incorporation when adjudicating whether a claim is direct or derivative."). As the New York Court of Appeals has explained, "for a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment" and "allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985); *see also Serino v. Lipper*, 123 A.D.3d

11

34, 39 (1st Dep't 2012). In *Yudell v. Gilbert*, 99 A.D.3d 108, 108 (1st Dep't 2012), the court stated that the test for "determining whether a claim is direct or derivative" is: (1) "who suffered the alleged harm (the corporation [] or the suing stockholders[,] individually)"; and (2) "who would receive the benefit of any recovery [or other remedy] (the corporation [] or the stockholders, individually)"? Here, the answer to the first part of the test is the Bank because it suffered the harm from the alleged tortious misconduct by the Individual Defendants. And the answer to the second part of the test is also the Bank because it would receive the benefit of any recovery. In fact, Plaintiff alleges the type of claim that New York courts have found to be derivative, namely alleged breaches that triggered a "precipitous decline in the market value of [Signature's] common shares" (harm to the Bank) that rendered Plaintiff's stock "valueless" (loss of value to investment stemming from harm to Bank). *See* Complaint ¶¶ 41, 140. Federal appellate courts have repeatedly reaffirmed this conclusion in cases involving disputes between the FDIC as receiver and stockholders. For example, in *In re Beach*, the court held that claims that directors engaged in mismanagement of the bank were derivative claims that were transferred to the FDIC as receiver because "such conduct caused injury first to the Bank and then only indirectly to [the shareholder] as the Bank's sole shareholder." 702 F.3d 772, 778 (4th Cir. 2012). In sum, all of Plaintiff's alleged investment losses flow from the alleged misconduct and mismanagement at Signature that caused the "precipitous decline in the market value of [Signature's] common shares," and thus are inseparable from an injury to Signature. As a result, Plaintiff's claims are derivative claims.[5]

---

[5] None of the cases that Plaintiff likely will again rely upon will change this outcome because either the at-issue claims (like Plaintiff's claims here) were derivative so any distinction between direct and derivative claims did not matter, or the parties just assumed that the Succession Clause applied only to derivative claims. *See, e.g.*, *Barnes v. Harris*, 783 F.3d 1185, 1195 (10th Cir. 2015) ("[P]laintiffs' claims rest on injuries to the Holding Company that are derivative of injuries to the Bank."); *Lubin v. Skow*, 382 F. App'x 866, 872 (11th Cir. 2010) ("[T]he Complaint alleges derivative harm . . . ."). In *Levin v. Miller*, a pre-*Zucker* case that Plaintiff may cite in opposition,

## CONCLUSION

For these reasons, the FDIC-R respectfully requests that the Court dismiss with prejudice this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as is just and appropriate.

**WOLLMUTH MAHER & DEUTSCH LLP**

By: /s/ Ryan A. Kane
  Ryan A. Kane
  Adam M. Bialek
  Maxwell G. Dillan
  Nicole C. Rende
  500 Fifth Avenue
  New York, New York 10110
  Phone: (212) 382-3300
  rkane@wmd-law.com
  abialek@wmd-law.com
  mdillan@wmd-law.com
  nrende@wmd-law.com

  *Attorneys for Federal Deposit Insurance Corporation as Receiver for Signature Bank*

---

the Seventh Circuit's decision did not actually decide the issue because all parties agreed that the Succession Clause was "limited to derivative claims a stockholder might have." 763 F.3d at 673 (Hamilton, J., concurring). In a concurring opinion, however, Judge Hamilton actually analyzed the issue and concluded the Succession Clause should "be interpreted, for sound policy reasons, more broadly to include a stockholder's *direct* claims that are based on harms resulting from dealings with the assets of the failed institution[.]" *Id*. (emphasis in original). In *Zucker*, the First Circuit relied on the *Levin* concurrence. 919 F.3d at 657-59.