**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAMERON N. VERDI,<br><br>              Plaintiff,<br><br>              v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION AS RECEIVER FOR<br>SIGNATURE BANK, et al.,<br><br>              Defendants. | Case No.: 24-cv-00791-DEH-RFT<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**FEDERAL DEPOSIT INSURANCE CORPORATION**
**AS RECEIVER FOR SIGNATURE BANK'S MOTION TO DISMISS**

Ryan A. Kane
Adam M. Bialek
Maxwell G. Dillan
Nicole C. Rende
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
rkane@wmd-law.com
abialek@wmd-law.com
mdillan@wmd-law.com
nrende@wmd-law.com

*Attorneys for Federal Deposit Insurance*
*Corporation as Receiver for Signature Bank*

April 1, 2024

**TABLE OF CONTENTS**

I.  PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS ......................... 1

    A.    Plaintiff's Claims Are Against Signature, with Respect to Signature and Seek Recovery from the Assets of Signature ............................................................. 1

    B.    Plaintiff's Labeling of His Claims as "Direct Claims" Does Not Remove Them from the Succession Clause ........................................................................ 3

    C.    Applying the Actual Test in the Succession Clause Results in the FDIC-R Succeeding to Plaintiff's Claims ........................................................................... 7

    D.    Plaintiff's Other Arguments Are Without Merit ..................................................... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Cases                                                                           Page(s)

*Aaron v. Illinois Nat'l Ins. Co.*,
  2023 WL 7389034 (E.D. La. Nov. 8, 2023) ............................................................................. 4

*Abrahamson v. W. Sav. & Loan Ass'n*,
  1994 WL 374294 (D. Ariz. Jan. 24, 1994) ............................................................................... 6

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012) ...................................................................................................... 7

*AHW Inv. P'ship v. Citigroup, Inc.*,
  806 F.3d 695 (2d Cir. 2015) .................................................................................................... 8

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................... 2

*Am. W. Bank Members v. Utah*,
  2023 WL 4108352 (D. Utah June 21, 2023) ........................................................................... 7

*Barnes v. Harris*,
  783 F.3d 1185 (10th Cir. 2015) ............................................................................................... 5

*Choi v. Tower Rsch. Cap. LLC*,
  2 F.4th 10 (2d Cir. 2021) ......................................................................................................... 2

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021).............................................................................................................. 4

*Esther Sadowsky Testamentary Tr. v. Syron,*
  2009 WL 10697000 (S.D.N.Y. Jan. 28, 2009) ........................................................................ 6

*Farnik v. FDIC*,
  707 F.3d 717 (7th Cir. 2013) ................................................................................................... 8

*FHFA v. JPMorgan Chase & Co.*,
  902 F. Supp. 2d 476 (S.D.N.Y. 2012) ..................................................................................... 2

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019)............................................................................................................. 3

*Hayes v. Gross*,
  982 F.2d 104 (3d Cir. 1992) .................................................................................................... 5

*Howard v. Haddad*,
   916 F.2d 167 (4th Cir. 1990) ................................................................................................ 5, 6

*In re Beach*,
   702 F.3d 772 (4th Cir. 2012) ................................................................................................. 6, 8

*In re Saxon Securities Litig.*,
   1985 WL 48177 (S.D.N.Y. Oct. 30, 1985) ................................................................................ 7

*In re Sunrise Sec. Litig.*,
   916 F.2d 874 (3d Cir. 1990) ...................................................................................................... 5

*Jennings v. City of New York*,
   2023 WL 8462739 (S.D.N.Y. Nov. 22, 2023) ........................................................................... 2

*LaSala v. Bordier et Cie*,
   519 F.3d 121 (3rd Cir. 2018) ..................................................................................................... 8

*Levin v. Miller*,
   763 F.3d 667 (7th Cir. 2014) ................................................................................................ 3, 4

*Lubin v. Skow*,
   382 F. App'x 866 (11th Cir. 2010) ............................................................................................ 5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*,
   28 F.3d 376 (3d Cir. 1994) ...................................................................................................... 10

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ..................................................................................................... 5

*PharmacyChecker.com LLC v. Nat'l Assoc. of Bds. of Pharmacy*,
   2024 WL 1199500 (S.D.N.Y. Mar. 20, 2024) ........................................................................... 2

*Verdi v. FDIC*,
   2023 WL 6388225 (C.D. Cal. Sept. 28, 2023) .......................................................................... 2

*Zucker v. Rodriguez*,
   919 F.3d 649 (1st Cir. 2019) ............................................................................................. *passim*

**Statutes**

12 U.S.C. § 1821 ............................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 9, 10

I.      **PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS**

Plaintiff acknowledges that third-party standing—the basis of the FDIC-R's lack of prudential standing argument—is a component of prudential standing and that a plaintiff cannot rest his claims on the legal rights or interests of third parties. Opp. at 11.[1] Plaintiff's arguments that he has prudential standing are without merit because, as demonstrated in the FDIC-R's opening memorandum, the FDIC-R owns the claims Plaintiff seeks to assert. Mot. at 6-12.[2] Plaintiff's arguments to the contrary are without merit.

      A.      **Plaintiff's Claims Are Against Signature, with Respect to Signature and Seek Recovery from the Assets of Signature**

Plaintiff argues that his claims are not subject to the FIRREA claims process because he seeks recovery from officer defendants in their individual capacities "<u>without recourse</u> to the assets of Signature." Opp. at 13 (emphasis in original). This claim is a fabrication. First, nowhere in Plaintiff's Complaint does he allege that he is seeking recovery from the Individual Defendants without recourse to the assets of Signature. Plaintiff asserts the opposite as he alleges that "[Signature] is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency." Complaint at ¶ 53. For this reason alone, Plaintiff's argument is without merit.[3] Moreover, Plaintiff's Complaint is replete with

---

[1] Capitalized terms have the same meaning as in the FDIC-R's opening memorandum of law ("Motion" or "Mot.") [ECF No. 36]. "Opp" refers to Plaintiff Cameron Verdi's Opposition to Motion to Dismiss [ECF No. 39].

[2] Because Plaintiff concedes that third-party standing is a component of prudential standing, his arguments about other aspects of prudential standing are irrelevant. Opp. at 4-11.

[3] To the extent that Plaintiff seeks recovery from the Individual Defendants under Signature's director and officer liability insurance, Plaintiff as a stockholder would be competing for a recovery source with the FDIC-R, so Plaintiff's competing right to that coverage is a claim of a stockholder with respect to an asset of the Bank. 12 U.S.C. § 1821(d)(2)(A)(i); *see Zucker v. Rodriguez*, 919 F.3d 649, 657 (1st Cir. 2019).

allegations against Signature and named the FDIC-R, Signature's Receiver, as a defendant. *See, e.g.*, Complaint ¶¶ 9 (naming "Defendant Signature Bank"); 122-123 (alleging all Defendants were members of conspiracies); First, Second, Third, and Sixth Causes of Action (brought against "all Defendants"). This makes Plaintiff's claims subject to the Succession Clause because they are with respect to Signature and the assets of Signature. That Plaintiff names "executive officer defendants," Opp. at 13, in addition to Signature as defendants does not remove those claims from the Succession Clause. The allegedly fraudulent statements and acts in the Complaint were statements or acts by Signature or on behalf of Signature. *See, e.g.*, Complaint ¶¶ 28-34, 40. Indeed, Plaintiff alleges that Signature is responsible for the acts of the Individual Defendants. *Id*. at ¶ 53. Moreover, Judge Selna already rejected a similar argument in the previous decision dismissing Plaintiff's action. *Verdi v. FDIC*, 2023 WL 6388225, at *6 (C.D. Cal. Sept. 28, 2023) ("Although Verdi brings this action against a number of individual Defendants in addition to FDIC-R, the statute supports dismissal with regard to all Defendants.").[4] The Succession Clause thus applies as its plain language provides that the FDIC-R succeeds to all of a stockholder's claims "with respect to the institution and the assets of the institution" without regard to whom the claims are brought against.[5]

---

[4] This holding is law of the case. *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 21 (2d Cir. 2021) ("The law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings"); *PharmacyChecker.com LLC v. Nat'l Assoc. of Bds. of Pharmacy*, 2024 WL 1199500, at *9 (S.D.N.Y. Mar. 20, 2024) (applying *Choi* to prior motion to dismiss decision); *Jennings v. City of New York*, 2023 WL 8462739, at *4 (S.D.N.Y. Nov. 22, 2023) (applying law of the case in context of subsequent motions to dismiss), *report and recommendation adopted*, 2023 WL 8462740 (S.D.N.Y. Dec. 7, 2023).

[5] Plaintiff's reliance on *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011) and *FHFA v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476 (S.D.N.Y. 2012) is misplaced. Opp. at 13. Those cases merely held that claims against a third-party bank, JPMorgan, not against a failed bank and its officers and directors like here, were not subject to the FIRREA claims process. *Am. Nat'l Ins. Co.*, 642 F.3d at 1139-40; *FHFA*, 902 F. Supp at 502.

### B. Plaintiff's Labeling of His Claims as "Direct Claims" Does Not Remove Them from the Succession Clause

Plaintiff asks the Court to find that he owns the claims based on a direct versus derivative claims distinction that appears nowhere in the text of FIRREA. *Zucker*, 919 F.3d at 656-57 ("[T]he direct-derivative distinction appears nowhere in the language of § 1821(d)(2)(A)"). Plaintiff responds that the statute does not mention direct claims, Opp. at 17, but this proves the point. The statute mentions neither direct nor derivative claims because it makes no distinction between the two types of claims. As the First Circuit held in *Zucker*: "In the end, there is *no ambiguity* in Congress's choice not to limit the claims to which the FDIC succeeds to derivative claims." 919 F.3d at 658 (emphasis added). Because the examination of § 1821(d)(2)(A) yields a clear answer that it is not limited to derivative claims, the analysis should begin and end with the statute. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

Plaintiff's suggestion that "near-universal case law" holds that the Succession Clause only applies to derivative claims misstates the law. Opp. at 20. To date, two Court of Appeals cases have addressed whether the Succession Clause applies to direct claims. In addition to the First Circuit's persuasive analysis in *Zucker*, in *Levin v. Miller*, a pre-*Zucker* case, the Seventh Circuit addressed the direct versus derivative issue, but did not actually decide the issue because the parties did not dispute for purposes of that motion that § 1821(d)(2)(A) was "limited to derivative claims a stockholder might have." 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, J., concurring).[6] In a

---

[6] At oral argument, the court asked whether the Succession Clause should be understood to transfer to the FDIC "*all* claims held by any stockholder of a failed bank." *Levin,* 763 F.3d at 672. This is the wrong question. And it is the same strawman that Plaintiff raises in his opposition. Opp. at 12-13. The FDIC-R has not taken the position that it succeeds to *all* stockholder claims. Thus, the question is not whether the Succession Clause confers on the FDIC-R *all direct stockholder claims*, regardless of whether those claims are "with respect to" the failed bank and its assets, but whether it confers on the FDIC-R *all claims that are "with respect to" the failed bank and its assets*, regardless of whether those claims are direct or derivative. The answer to the latter question is yes

3

concurring opinion, however, Judge Hamilton actually analyzed the issue and concluded the Succession Clause should "be interpreted, for sound policy reasons, more broadly to include a stockholder's *direct* claims that are based on harms resulting from dealings with the assets of the failed institution[.]" *Id*. (emphasis in original). A result that allows a stockholder to recover from a limited set of bank-related assets "ahead of or on par with the FDIC," Judge Hamilton added, "turns the equities upside down." *Id.* In *Zucker*, the First Circuit relied on the *Levin* concurrence. *Zucker*, 919 F.3d at 657-58. Notably, Plaintiff does not dispute that *Zucker*, in turn, is consistent with *Collins v. Yellen*, where the Supreme Court did not read a distinction between direct and derivative claims into the similar succession clause in HERA. *See* Mot. at 9 (discussing *Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021)). Nor does Plaintiff dispute that the more recent decisions have followed *Zucker*. *See* Opp. at 25 (acknowledging that *Am W. Bank Members v. Utah*, 2023 WL 41083552 (D. Utah June 21, 2023) followed *Zucker*); *id*. at 21 (stating that *Aaron v. Illinois Nat'l Ins. Co.*, 2023 WL 7389034 (E.D. La. Nov. 8, 2023) "embraced the test in *Zucker* and found that claims asserted against the officer defendants belonged to the FDIC-R").[7]

      Moreover, Plaintiff's five attempts to avoid the application of *Zucker* to his claims all fail. Opp. at 23-25. Plaintiff first claims that "*Zucker's* application of the Succession Clause turned legally and factually on the fact that the claims there "[were] not one[s] alleging fraud or one[s] to enforce the securities laws." Opp. at 23-24 (alternations in original). This is not true. In the part of the decision cited by Plaintiff, the First Circuit merely commented that an individual legislator's fear that a rejected amendment would reduce incentives to bring securities fraud lawsuits was

---

because that is what the Succession Clause says.

[7] Plaintiff notes that the *Aaron* court abandoned the *Zucker* test in finding claims against accountants did not belong to the FDIC as receiver, Opp. at 21, but, even if that is so, it is irrelevant here as Plaintiff does not assert claims against anyone besides Signature and its officers.

4

inapplicable because *Zucker* did not involve securities fraud claims. *Zucker*, 919 F.3d at 660. *Nothing* turned on whether the claims in *Zucker* were securities fraud claims. Plaintiff's second criticism is merely that *Zucker* rejected Plaintiff's direct versus derivative claims distinction. This is not a criticism at all—it is just Plaintiff's disagreement with the holding. Plaintiff's third point asserts that his claims do not fall within the Succession Clause under the *Zucker* test, but that is incorrect as discussed below. *See infra* at Section I.C. Plaintiff's fourth point that *Zucker* did not involve any claim against an auditor is irrelevant because neither does Plaintiff's Complaint. Plaintiff's fifth and final point has nothing to do with *Zucker*; Plaintiff asks this Court, without basis, to disregard *Am W. Bank Members* because it followed *Zucker*.

Further, Plaintiff's reliance on older pre-*Zucker* cases misses the mark. *First*, in some of Plaintiff's cases, the distinction between direct and derivative claims was irrelevant because the claims *were* derivative claims and the FDIC owned them regardless. *See Barnes v. Harris*, 783 F.3d 1185, 1194-95 (10th Cir. 2015); *Lubin v. Skow*, 382 F. App'x 866, 871 (11th Cir. 2010); *Pareto v. FDIC*, 139 F.3d 696, 701 (9th Cir. 1998). That a court says, as did the *Pareto* court, that the Succession Clause "vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC" does not mean that the statute vests in the FDIC *only* the right to bring a derivative action. 139 F.3d at 700.

*Second*, Plaintiff mischaracterizes a group of cases from over thirty years ago as supporting his argument concerning the Succession Clause when those cases did not even consider the Succession Clause. The cases considered different issues, such as whether permitting direct suits would violate an "absolute priority" rule or generally impair the statutory mandate under FIRREA to protect and maximize the assets of the failed institution. *Hayes v. Gross*, 982 F.2d 104, 109 (3d Cir. 1992); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990); *Howard v. Haddad*, 916

F.2d 167, 170 (4th Cir. 1990); *Abrahamson v. W. Sav. & Loan Ass'n*, 1994 WL 374294, at *7 (D. Ariz. Jan. 24, 1994).

*Third*, Plaintiff simply mischaracterizes the holdings in a number of his cited cases. For example, Plaintiff describes the holding in *Esther Sadowsky Testamentary Tr. v. Syron* as: "applying the Succession Clause because '[t]his is a derivative action.'" Opp. at 20 (alteration in original). However, *Syron* (i) does not apply the Succession Clause as it addressees whether the FHFA owned claims under HERA, (ii) merely states "[t]his is a derivative action" in the very first sentence of the opinion, not in the holding, and (iii) never considers whether HERA applies to direct claims because the case involved a derivative action. 2009 WL 10697000, at *1-2 (S.D.N.Y. Jan. 28, 2009).[8] As another example, Plaintiff suggests that *In re Beach* stands for the proposition that no direct claims can be transferred to the FDIC under the Succession Clause. Opp. at 20. In that case, the Fourth Circuit actually affirmed the holding that the FDIC succeeded to every single claim except one claim. 702 F.3d 772, 781 (4th Cir. 2012). The one claim that the court found the FDIC-R did not own was a claim alleging directors of a bank holding company (not a failed bank) improperly subordinated its equity interest in an LLC that owned real property, which is inapposite to the claims here. *Id*. at 780. The decision actually supports dismissal of Plaintiff's claims.

In short, the Succession Clause test is not dependent on how a plaintiff labels his claims (or on how they may be characterized under state law), but instead on whether the claim is with respect to the bank and the assets of the bank.

---

[8] The FDIC-R cited *Syron* in its opening brief for its discussion of the wide breadth of the Succession Clause under FIRREA in analogizing it to the succession clause in HERA. Mot. at 7.

### C. Applying the Actual Test in the Succession Clause Results in the FDIC-R Succeeding to Plaintiff's Claims

The proper Succession Clause test thus is whether a stockholder's claims are "with respect to the [bank] and the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i); *Zucker*, 919 F.3d at 656-57; *Am. W. Bank Members*, 2023 WL 4108352, at *5-8 (D. Utah June 21, 2023). Here, Plaintiff's claims indisputably are a stockholder's claims, so the first step of the test is met.

For the second step, Plaintiff ignores the FDIC-R's detailed showing that Plaintiff's claims are with respect to the Bank and the assets of the Bank. Mot. at 6-9. Plaintiff's rhetoric that the FDIC-R's descriptions of his claims constitute, among other things, sophistry, Opp. at 16, is unfounded. The gravamen of Plaintiff's Complaint is harm to the Bank and that all of the Bank's stock was rendered worthless. *See, e.g.*, Complaint ¶ 46 ("essentially rendering SBNY stock illiquid and valueless - given the bank's failure"). In an attempt to circumvent the plain language of the Succession Clause, Plaintiff contends that his claims allegedly involve both the devaluation of Signature's assets and the inflation of the value of Signature's stock. However, Plaintiff's attempt to parse his claims is meritless. First, the alleged misrepresentations were, at bottom, about the assets of the Bank (*see* Complaint ¶¶ 28-34), and thus, were "with respect to" the Bank and its assets. Further, Plaintiff does not just seek damages for misrepresentations by Bank officers equal to the difference between an actual and inflated stock price,[9] but rather Plaintiff seeks damages from both Signature and Individual Defendants based on the complete loss in value in the stock

---

[9] Even assuming that Plaintiff sought damages for inflated stock price, the result would be the same because "out of pocket" losses constitute the amount that the purchaser paid minus the true value of the securities. *See Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir 2012). Determining the true value of stock takes into consideration, among other things, "corporate asset value, cash flow, product acceptance, prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and a myriad of other variables." *In re Saxon Securities Litig.*, 1985 WL 48177, at *9 (S.D.N.Y. Oct. 30, 1985). Therefore, Plaintiff's claims are still "with respect to" the Bank and its assets.

7

due to the injury first suffered by Signature which rendered the stock worthless. *See, e.g.*, *id.* ¶¶ 132-134 (describing drop in stock price from $70/share to $0.14/share); *see also* Opp. at 20 (Plaintiff describing his claims as "based on a decline in the value of the shares that Plaintiff purchased" and "damages inflicted on Plaintiff due to the decline in the value of his personal assets"). However, both descriptions of Plaintiff's claims lead to the same place—the alleged claims are based on misrepresentations about the Bank and its assets, and thus are "with respect to" the Bank and the Bank's assets. *Cf. LaSala v. Bordier et Cie,* 519 F.3d 121, 132 (3rd Cir. 2018) (holding that claims against directors and officers for allegedly breaching duties by "artificially inflating the stock price" which "pushed [corporation] into a liquidating bankruptcy," "necessarily pleaded the initial harm to the corporation"). Accordingly, Plaintiff's claims belong to the FDIC-R under the Succession Clause and Plaintiff lacks prudential standing.

Finally, even if the Court decided to instead apply a direct/derivative test, the outcome would be the same because Plaintiff's claims are derivative under applicable New York law (*see AHW Inv. P'ship v. Citigroup, Inc.*, 806 F.3d 695, 699 (2d Cir. 2015) ("Under New York law, we look to the law of the state of incorporation when adjudicating whether a claim is direct or derivative.")), notwithstanding the labels Plaintiff attempts to apply to his claims. Plaintiff's Opposition ignores the FDIC-R's demonstration that Plaintiff's claims are in fact derivative, including the FDIC-R's cited cases—*Abrams*, *Serino*, and *In re Beach*. Mot. at 11-12. Plaintiff's arguments for why his breach of fiduciary duty, breach of duty of loyalty and fraud claims are not derivative boil down to artful labeling, which courts reject as a means to avoid FIRREA. *Farnik v. FDIC*, 707 F.3d 717, 723 (7th Cir. 2013) ("[L]itigants cannot avoid FIRREA's administrative requirements through strategic pleading."). What's more, Plaintiff mischaracterizes his own claims. Plaintiff continually suggests that his claims are brought under the federal securities laws,

8

*see, e.g.*, Opp. at 1, 16, 18-19, 22-23, 25, but they are not. Plaintiff tries to distinguish *Zucker* as involving negligence and breach of fiduciary duty, Opp. at 23, but Plaintiff too brings breach of fiduciary duty claims. In the end, Plaintiff sidesteps the critical question—who suffered the alleged harm first. *See* Mot. at 12. Here the answer is Signature: it was the "precipitous decline in the market value of [Signature's] common shares", Complaint ¶ 140, and the eventual failure of Signature, that caused the decline in the value of Plaintiff's shares in Signature. Thus, Plaintiff's claims are derivative and fall under the Succession Clause even if the Court follows (which it should not) the test advocated by Plaintiff instead of the statutory interpretation in *Zucker* along with the recent cases following *Zucker*, and the plain language of the Succession Clause.

        D.        **Plaintiff's Other Arguments Are Without Merit**

*First*, Plaintiff's arguments relating to his pleading of the elements for his causes of action are irrelevant. Opp. at 6-9. The FDIC-R is not seeking to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to adequately plead his claims, but because he lacks prudential standing. That analysis depends on application of the Succession Clause, which as set forth above, transfers all of Plaintiff's claims to the FDIC-R. As a result, whether Plaintiff has properly pleaded the elements of these claims is irrelevant to whether this action should be dismissed.[10]

*Second,* Plaintiff's passing reference to the PSLRA, Opp. at 19, also is irrelevant because he does not bring a securities fraud claim or a class action. Nor does he explain how the PSLRA could affect the application of the Succession Clause even if he had brought a class action.

*Third*, Plaintiff contends that insurance funds from D&O insurance are not a Bank asset. Opp. at 21. The FDIC-R does not contend the proceeds were assets of the Bank, but rather a

---

[10] Although Plaintiff focused his opposition to claims against Signature, as the FDIC-R made clear in its opening memorandum, all claims, including those asserted against the Individual Defendants, are subject to the FDIC-R's motion to dismiss and should be dismissed. Mot. at 7 n.3, 8 n.4.

9

contingent recovery source—i.e., assets for the FDIC-R for any claims that it brings against the Bank's former directors and officers and any professionals that it employed. However, we note that the insurance policies were found to be such assets under *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384-85 (3d Cir. 1994), *as amended* (Aug. 29, 1994). Plaintiff's argument about who is insured under the policy, Opp. at 21-22, was rejected by *Nation Union*, which stated: "Whether City Savings will ultimately be entitled to collect under the insurance policies is not relevant to the threshold question of whether the insurance policies issued to CityFed and its subsidiaries are assets of the banks." *Id*.

*Finally*, Plaintiff's reliance on Congress's rejection of a proposal to give the FDIC-R priority over shareholder claims, Opp. at 22, was wholly rejected by *Zucker*. The *Zucker* plaintiff, like Plaintiff here, asked the court "to infer that the . . . rejection of § 214(o)'s priority language means that Congress could not have intended to give the FDIC ownership of claims like his." *Zucker*, 919 F.3d at 660. But, as the First Circuit explained, "[i]nferences of this sort are notoriously unreliable and are to be avoided by courts. The fact that Congress rejected a provision about one thing tells us little about what Congress intended in enacting a provision about something else." *Id.* Whereas Plaintiff emphasizes the legislative history of a rejected amendment, Plaintiff ignores the FDIC-R's demonstration that allowing stockholder lawsuits like Plaintiff's lawsuit to go forward would turn FIRREA's priority scheme on its head and undermine FIRREA's statutory scheme for responding to bank crises. Mot. at 10-11.

## CONCLUSION

For the reasons set forth above and in the FDIC-R's Motion, the FDIC-R respectfully requests that the Court dismiss this case with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as is just and appropriate.

        **WOLLMUTH MAHER & DEUTSCH LLP**

By: */s/    Ryan A. Kane*
    Ryan A. Kane
    Adam M. Bialek
    Maxwell G. Dillan
    Nicole C. Rende
    500 Fifth Avenue
    New York, New York 10110
    Phone: (212) 382-3300
    rkane@wmd-law.com
    abialek@wmd-law.com
    mdillan@wmd-law.com
    nrende@wmd-law.com

    *Attorneys for Federal Deposit Insurance Corporation as Receiver for Signature Bank*